IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

VERNON SMITH,                          )
                                       )
              Plaintiff,               )
                                       )   CIVIL ACTION
v.                                     )
                                       )   No. 08-2345-KHV-DWB
                                       )
MICHAEL J. ASTRUE,                     )
Commissioner of Social Security,       )
                                       )
              Defendant.               )
_____)

REPORT AND RECOMMENDATION

Plaintiff seeks review of a decision of the Commissioner of
Social Security (hereinafter Commissioner) denying disability
insurance benefits (DIB) and supplemental security income (SSI)
under sections 216(i), 223, 1602 and 1614(a)(3)(A) of the Social
Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and
1382c(a)(3)(A)(hereinafter the Act).  The case has been referred
for a report and recommendation, briefing is complete, and after
considering the record, and the arguments of the parties, the
court recommends that the decision be REVERSED and the case be
REMANDED for further proceedings consistent with this opinion.

I.   Background

Plaintiff applied for DIB and SSI, and in due course
Administrative Law Judge (ALJ) Jack D. McCarthy issued a decision

in which he found plaintiff is not disabled within the meaning of the Act, and denied the applications. (R. 16-27). Plaintiff requested and was denied Appeals Council review of the ALJ's decision. (R. 7-9). Therefore, the ALJ's decision is the final decision of the Commissioner. Id.; Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006). Plaintiff now seeks judicial review.

## II.  Legal Standard

The court's review is guided by the Act.  42 U.S.C. §§ 405(g), 1383(c)(3).  Section 405(g) provides, "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but less than a preponderance, and it is such evidence as a reasonable mind might accept to support a conclusion.  Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004); Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither reweigh the evidence nor substitute [it's] judgment for that of the agency."  White, 287 F.3d at 905 (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  The determination of whether

substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that he has a physical or mental impairment which prevents him from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d).  The claimant's impairments must be of such severity that he is not only unable to perform his past relevant work, but cannot, considering his age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  Id.

The Commissioner uses a five-step sequential process to evaluate whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920 (2006); Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004); Ray, 865 F.2d at 224.  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has severe impairments, and

whether the severity of his impairments meets or equals the
severity of any impairment in the Listing of Impairments (20
C.F.R., Pt. 404, Subpt. P, App. 1).  Id. at 750-51.  If
plaintiff's impairments do not meet or equal the severity of a
listing, the Commissioner assesses claimant's RFC.  20 C.F.R.
§§ 404.1520, 416.920.  This assessment is used at both step four
and step five of the sequential evaluation process.  Id.

     After assessing claimant's RFC, the Commissioner evaluates
steps four and five--whether the claimant can perform his past
relevant work, and whether he is able to perform other work in
the economy.  Williams, 844 F.2d at 751.  In steps one through
four the burden is on claimant to prove a disability that
prevents performance of past relevant work.  Dikeman v. Halter,
245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751
n.2.  At step five, the burden shifts to the Commissioner to show
other jobs in the national economy within plaintiff's capacity.
Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

**III. Discussion**

     Plaintiff alleges error in the ALJ's finding that
plaintiff's condition does not meet the criteria of Listing
12.05C. (Pl. Br. 18-23).  Specifically, he claims the ALJ did
not discuss the criteria he applied in reaching the conclusion
that plaintiff "does not have the deficits in adaptive
functioning required to satisfy the requirements of listing

-4-

12.05," and the record evidence does not support that conclusion.
(Pl. Br. 18). He then points to plaintiff's school records, and
to the report of a psychologist, Dr. Ward--evidence tending, in
plaintiff's view, to establish deficits in adaptive functioning.
(Pl. Br. 19-20). Plaintiff points to the ALJ's finding that
plaintiff has IQ scores between 60 and 70, and claims that the
record shows "other mental impairment[s] imposing additional and
significant work-related limitation of function." Id. at 21.
Plaintiff argues that in addition to mild mental retardation, he
has other mental impairments consisting of his "memory impairment
which causes difficulty completing most work assignments; his
inability to sustain effort during an eight-hour workday; his
difficulty in his relationships with supervisors and his marked
difficulties in concentration persistence and pace." Id. at 23.
He argues these additional impairments are "severe" within the
meaning of the Act, thereby satisfying the final criterion of
Listing 12.05C and establishing that plaintiff's condition meets
Listing 12.05C. Id. at 21-23.

The Commissioner argues that the ALJ properly found
plaintiff's condition does not meet Listing 12.05C because
plaintiff "does not have the deficits in adaptive functioning
contemplated by 12.05C." (Comm'r Br. 9). He argues, however,
that the court need not determine whether plaintiff has the
necessary deficits in adaptive functioning because plaintiff

"does not have another impairment imposing a significant work-
related limitation, as plainly required under Listing 12.05C."
Id.  The Commissioner argues that the additional mental
impairments cited by plaintiff "are limitations <u>resulting</u> from
his borderline intellectual functioning to mild mental
retardation with higher adaptive functioning, not <u>other</u>
impairments, as required by Listing 12.05C."  (Comm'r Br.
10)(citing <u>Franklin v. Chater</u>, No. 96-5086, 1996 WL 731591 at *3
(10th Cir. Dec. 20, 1996)(emphasis in Comm'r Br.).  Therefore, in
the Commissioner's view, the ALJ properly found that plaintiff's
condition does not meet Listing 12.05C.

> **A.    The ALJ's Findings with Regard to Listing 12.05C**

The ALJ found that plaintiff has a mental impairment which
is "severe" within the meaning of the Act and regulations--
borderline intellectual functioning to mild mental retardation,
with higher adaptive functioning--and that plaintiff has no
"severe" physical impairments.  (R. 19).  The ALJ explained this
finding and added that plaintiff has no other mental impairment
imposing an additional and significant work-related limitation:

> While the record establishes that the claimant has
> borderline intellectual functioning to mild mental
> retardation, with higher adaptive functioning, the
> record does not establish the existence of a second
> significant impairment limiting his ability to work as
> required by listing 12.05C.  There is no testing in the
> record for narcolepsy or obstructive sleep apnea.  As
> such, the undersigned concludes there is no evidence to
> establish whether the claimant has either impairment.
> Even if there were test results in the record, the

-6-

>       claimant has not been treated for either condition;
>       therefore, it is unknown whether treatment would be
>       successful in controlling any symptoms.  In this
>       instance, there is no other medically determinable
>       physical <u>or mental</u> impairment imposing an additional
>       and significant work-related limitation of function.
>       As such, listing 12.05C is not met.

(R. 21)(emphasis added).

The ALJ summarized the report of a consultative examination

performed on March 29, 2006 by Dr. Ward.  (R. 22).  He noted the

intelligence quotient (IQ) scores achieved in testing performed

by Dr. Ward:  Verbal, 62; performance, 73; and full scale, 64.

<u>Id.</u>  He recognized Dr. Ward's diagnosis of mild mental

retardation with "significant limitations in adaptive functioning

in the areas of home living, use of community services, self-

direction, functional academic skills, work, and health."  <u>Id.</u>

He acknowledged that Dr. Ward expressed concern regarding

plaintiff's "significant disturbance of consciousness (a

delirium) based on his reports of 'blacking out' two or three

times per day for one or two hours each time."  <u>Id.</u>  He concluded

his summary of Dr. Ward's report:

>       Dr. Ward noted profound memory problems and opined the
>       claimant would have difficulty completing most work
>       assignments, sustaining effort during an 8-hour
>       workday, but he could maintain concentration for most
>       work assignments for an hour or two, but may not be
>       able to maintain concentration for any longer period of
>       time.  Dr. Ward noted he should not have difficulty
>       with relationships with co-workers, but would very
>       likely have difficulty in his relationships with
>       supervisors if they question his ability to read or do
>       simple math.  Finally, he opined the claimant was not
>       capable of handling his own finances.

(R. 22)(citing Ex. 2F (R. 307-10)).

The ALJ also summarized the opinions of the state agency psychologists who reviewed the record at the initial and reconsideration level--Dr. Cohen and Dr. Blum.  Id.  He noted the state agency psychologists opined that plaintiff had adapted well as demonstrated by getting a driver's license, playing sports, paying bills, preparing simple meals, and caring for his young children.  Id.  He summarized the psychologists' opinions regarding plaintiff's mental abilities;

> He would have difficulty with tasks that are detailed
> and require continuous attention over time.  He appears
> to get along well with friends and family.  He reported
> difficulty with others when he gets frustrated due to
> lack of understanding.  He would do better in jobs that
> were routine and repetitive and did not require working
> with the general public.  The State agency
> psychologists also noted the claimant provided for all
> of his self-care, cleaned, did laundry, shopped for
> groceries with his girlfriend, played video games and
> was able to pay bills and count change although he
> could not handle a bank account.  The State agency
> psychologists noted the claimant reported that he could
> not read; however, the function report appeared to be
> completed in his own hand and the spelling and grammar
> were adequate.

(R. 22-23)(citing Exs. 4F, 5F, 6F (R. 325-44))(citations omitted).

The ALJ noted the state agency psychologists' conclusion that plaintiff has IQ and memory limitations precluding detailed work, but that plaintiff is able to do routine and repetitive work which does not require working with the public.  (R. 23).  Finally, he noted the state agency psychologists found plaintiff

has "borderline intellectual function to mild mental retardation with higher adaptive functioning," with "moderate restriction of activities of daily living; mild difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; and no repeated episodes of decompensation, each of extended duration." Id.

The ALJ stated that he "generally agrees with the opinions of the State agency psychologists." Id. He concluded that plaintiff has mild to moderate limitations in activities of daily living, mild to moderate difficulties in maintaining social functioning, mild to marked difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. Id.

The ALJ then discussed the reasons for finding that plaintiff does not meet listing 12.05C. (R. 23-24). With regard to the diagnostic description of mental retardation, the ALJ stated:

> While the medical evidence includes school records of placement in special education, there are no intelligence test results to support a finding of mental retardation prior to age 22. Even if there were intelligence tests of mild mental retardation prior to age 22, the evidence demonstrates that the claimant does not have the deficits in adaptive functioning required to satisfy the requirements of listing 12.05.

(R. 24)(citations omitted).

He also explained why he found plaintiff did not meet the specific criteria of Listing 12.05C:

-9-

>As explained above the claimant has IQ scores between
>60 and 70.  However, there is no evidence to support
>the existence of an additional and significant work-
>related limitation of function.  Additionally, the
>evidence demonstrates that the claimant does not have
>the deficits in adaptive functioning required to
>satisfy the requirements of listing 12.05.

Id.

### B.    The Criteria of Listing 12.05C

The "Listing of Impairments" describes certain impairments that the Commissioner considers disabling.  20 C.F.R. §§ 404.1525(a), 416.925(a); see also, 20 C.F.R., Pt. 404, Subpt. P, App. 1.  If plaintiff's condition meets or equals the severity of a listed impairment, his impairment is conclusively presumed disabling.  Bowen v. Yuckert, 482 U.S. 137, 141 (1987); Williams, 844 F.2d at 751.  However, plaintiff "has the burden at step three of demonstrating, through medical evidence, that his impairments 'meet all of the specified medical criteria' contained in a particular listing."  Riddle v. Halter, No. 00-7043, 2001 WL 282344 at *1 (10th Cir. Mar. 22, 2001) (quoting Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis in Zebley)).

"The [Commissioner] explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard.  The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just

'substantial gainful activity.'" <u>Zebley</u>, 493 U.S. at 532-33 (emphasis in original) (citing 20 C.F.R. § 416.925(a) (1989)). The listings "streamlin[e] the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." <u>Yuckert</u>, 482 U.S. at 153.  "Because the Listings, if met, operate to cut off further detailed inquiry, they should not be read expansively." <u>Caviness v. Apfel</u>, 4 F. Supp. 2d 813, 818 (S.D. Ind. 1998).

Listing 12.05 provides, in relevant part:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period:  i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . .
>
> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.05.

Listing 12.05 is somewhat different than the other listings for mental disorders. <u>Id.</u>, § 12.00A.  The listing contains a diagnostic description of mental retardation (introductory paragraph) and four sets of criteria describing listing-level

-11-

severity (Paragraphs A through D).  20 C.F.R., Pt. 404, Subpt. P,
App. 1 §§ 12.00A, 12.05A-D.  There are four distinct ways in
which a claimant may establish disability pursuant to listing
12.05.  Id.; McKown v. Shalala, No. 93-7000, 1993 WL 335788, *1
(10th Cir. Aug. 26, 1993).  To meet the listing, plaintiff must
show that his condition satisfies both the diagnostic description
of mental retardation and any one of the four severity criteria.
Id., § 12.00A.

    The regulations provide that where verbal, performance, and
full scale IQ scores are derived from a test, the lowest
individual score of the three will be used when considering
12.05C.  20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.00D(6)(c).  If
the claimant has an additional physical or mental impairment(s)
which is "severe" within the meaning of 20 C.F.R. §§ 404.1520(c),
and 416.920(c), it will be considered to impose an additional and
significant work-related limitation of function in accordance
with Listing 12.05C.  20 C.F.R., Pt. 404, Subpt. P, App. 1
§ 12.00A; see also, Hinkle v. Apfel, 132 F.3d 1349, 1352-53 (10th
Cir. 1997)(reaching the same conclusion before the regulations
were changed in 2000 to specify the equivalence between "severe"
impairments and "additional and significant work-related
limitation of function.")  Therefore, to meet Listing 12.05C, a
claimant must show:  (1) evidence of deficits in adaptive
functioning initially manifested during the developmental period,

-12-

(2) a valid IQ score of 60 through 70, and (3) another severe
impairment.  The ALJ affirmatively found, and both parties
apparently agree, that plaintiff meets requirement (2), and has a
valid IQ score of 60 through 70.  (R. 24)("claimant has IQ scores
between 60 and 70"); (Pl. Br. 21); (Comm'r Br.)(no contrary
argument).  Requirements (1) and (3), however, are in dispute.
Because the Commissioner asserts the decision can be affirmed on
the basis that plaintiff does not meet requirement (3), the court
begins with consideration of that issue.

### C.   Whether the ALJ Properly Found Plaintiff Does Not Have Another "Severe" Impairment

The Commissioner argues that the ALJ properly found
plaintiff does not have an additional and significant work-
related limitation.  (Comm'r Br. 9).  The Commissioner asserts
that plaintiff does not, and reasonably cannot, argue that he
suffers from another "severe" mental impairment resulting in
work-related limitations, but that plaintiff merely cites to
difficulties and limitations which are symptoms resulting from
the "severe" mental impairment found by the ALJ--"borderline
intellectual functioning to mild mental retardation with higher
adaptive functioning."  (Comm'r Br. 10).  Contrary to the
Commissioner's assertion, however, plaintiff argues that Dr. Ward
identified mental impairments other than mild mental retardation
imposing an additional and significant work-related limitation of
function.  (Pl. Br. 21).  Plaintiff later identified these

-13-

impairments as "Smith's memory impairment . . .; his inability to sustain effort during an eight-hour workday; his difficulty in his relationships with supervisors and his marked difficulties in concentration persistence and pace." (Pl. Br. 23).  Thus, the question is whether the impairments cited by plaintiff are in addition to plaintiff's mild mental retardation or whether they are merely limitations resulting from that condition.

The ALJ answered the question by finding "there is no other medically determinable physical or mental impairment imposing an additional and significant work-related limitation of function." (R. 21).  In analyzing Listing 12.05C, the ALJ stated the finding somewhat differently, "there is no evidence to support the existence of an additional and significant work-related limitation of function" (R. 24), and it is clear the ALJ found all of plaintiff's mental limitations result from plaintiff's "borderline intellectual functioning to mild mental retardation, with higher adaptive functioning." (R. 21).

As plaintiff suggests, the evidence does not unilaterally support the ALJ's finding.  To be sure, the opinions of the state agency psychologists support a finding that all of plaintiff's mental limitations result from his "borderline intellectual functioning to mild mental retardation, with higher adaptive functioning."  Although plaintiff argues that the state agency psychologists' finding of marked difficulties in maintaining

concentration, persistence, or pace is an additional mental impairment, the record makes clear that those psychologists believed the marked difficulties were the result of plaintiff's mental impairment.  The state agency psychologists found only one mental impairment, "Borderline to MMR with higher adaptive functioning." (R. 326).  The form used for rating plaintiff's functional limitations instructs the psychologists to "Indicate to what degree the following functional limitations exist as a result of the individual's mental disorder(s)." (R. 337)(parenthetical omitted)(emphasis added).  Thereafter, the psychologists indicated plaintiff has "Marked" difficulties in maintaining concentration, persistence, or pace. _Id._

Nonetheless, as plaintiff's brief suggests, Dr. Ward's report is not so singular.  Dr. Ward provided three diagnostic impressions:  (1) "Rule Out Dementia Not Otherwise Specified," (2) "Rule Out Delirium Not Otherwise Specified," and (3) "Mild Mental Retardation." (R. 310).  Moreover, Dr. Ward's report must be read to discuss each of the three diagnoses. _Id._  The court quotes Dr. Ward's "Psychological Impressions" in full:

> Mr. Smith clearly meets criteria for Mild Mental Retardation.  He appears to have significant limitations in adaptive functioning in the areas of home living, use of community services, self-direction, functional academic skills, work, and health.  In addition, he reported placement in special education classes throughout his schooling.
>
> I am very concerned that Mr. Smith seems to have a significant disturbance of consciousness (a delirium).

-15-

He reported that he is "blacking out" two or three
times per day for one or two hours each time.  His
girlfriend confirmed this pattern.  Mr. Smith said he
does not use alcohol or illegal drugs.  There are
several serious medical conditions that might be
causing these blackouts.  Mr. Smith needs a
consultation with a neurologist to diagnose the causes
of these blackouts.

In addition, Mr. Smith seems to be having profound
memory problems.  Given his extremely low level of
intellectual functioning, Mr. Smith's Working Memory
Index score was still below his other Index scores.
Mr. Smith reported having at least one concussion in
1998 where he stayed in the hospital, and he may have
had another concussion.  Mr. Smith needs a consultation
with a neurologist to determine whether his memory
abilities are deteriorating.  He may also need
neuropsychological testing to determine his current
memory functioning.

Mr. Smith probably would have difficulty completing
most work assignments.  He probably would not be able
to sustain effort during an eight-hour workday.  Mr.
Smith should be able to maintain concentration for most
work assignments for an hour or two, but may not be
able to maintain concentration for any longer.  Mr.
Smith should not have difficulty with relationships
with coworkers.  Mr. Smith is very likely to have
difficulty in his relationships with supervisors, if
they question his ability to read or do simple math.
Mr. Smith does not seem to be capable of managing his
own finances, and he will need a payee.

This information is provided for Mr. Smith's claims of
mental disability.  No evaluation was done and no
conclusions were drawn regarding any claims of physical
disability.

(R. 310).

    As the quoted portion of his report demonstrates, Dr. Ward

considered mild mental retardation, delirium, and profound memory

problems as three individual mental impairments.  The first three

paragraphs quoted address mild mental retardation, delirium, and

profound memory problems, respectively.  In the fourth paragraph,
the psychologist addressed the restrictions and limitations
resulting from all three of the mental impairments, without
differentiating between those restrictions and limitations caused
separately by each of the impairments.  However, to the extent
the delirium or profound memory problems are "severe" within the
meaning of the regulations, each would constitute an "other
mental impairment imposing an additional and significant work-
related limitation of function" sufficient to meet the third
requirement of Listing 12.05C.

     As discussed above, the ALJ summarized Dr. Ward's report and
recognized Dr. Ward's discussion of both delirium and profound
memory problems.  (R. 22).  The ALJ found that plaintiff does not
have an "other mental impairment imposing an additional and
significant work-related limitation of function."  (R. 24); see
also, (R. 21)("there is no other medically determinable physical
or mental impairment imposing an additional and significant work-
related limitation of function.").  However, the ALJ did not
explain how he concluded that the delirium and profound memory
problems identified by Dr. Ward are not "severe" within the
meaning of the Act and regulations, or do not impose additional
and significant work-related limitation of function beyond that
imposed by plaintiff's mild mental retardation.  In fact,
contrary to the clear implications of Dr. Ward's report, the ALJ

stated "there is <u>no evidence</u> to support the existence of an additional and significant work-related limitation of function." (R. 24)(emphasis added).  This is error.

The court finds the Commissioner has not shown substantial evidence in the record as a whole supports the determination that plaintiff has no additional "severe" impairments.  The court may not weigh the evidence in the first instance and determine whether plaintiff's delirium or profound memory problems impose additional and significant work-related limitation of function beyond that imposed by plaintiff's mild mental retardation. <u>Hackett</u>, 395 F.3d at 1172; <u>White</u>, 287 F.3d at 905; <u>Casias</u>, 933 F.2d at 800.  Therefore, unless the court can find that the ALJ properly concluded that requirement (1) of Listing 12.05C is not met, it will be necessary to remand this case for the Commissioner to properly evaluate plaintiff's delirium and profound memory problems as suggested by Dr. Ward.

**D.   Whether the ALJ Properly Found Claimant Does Not Have the Deficits in Adaptive Functioning Required by Listing 12.05**

Plaintiff claims the ALJ did not "discuss what criteria he applied in reaching" the conclusion that plaintiff "does not have the deficits in adaptive functioning required to satisfy the requirements of listing 12.05C." (Pl. Br. 18)(quoting (R. 24)). He argues that Dr. Ward found significant deficits in adaptive functioning, that plaintiff's school records demonstrate

considerable deficits in functioning, and that deficits in school functioning are properly used as evidence of deficits in adaptive functioning before age 22.  (Pl. Br. 19-20)(quoting <u>Barnes v. Barnhart</u>, 116 Fed. Appx. 934, 941 (10th Cir. Nov. 26, 2004)). The Commissioner argues to the contrary that plaintiff "does not have the deficits in adaptive functioning contemplated by 12.05." (Comm'r Br. 9).

As plaintiff's argument acknowledges, the ALJ found plaintiff "does not have <u>the deficits in adaptive functioning required</u> to satisfy the requirements of listing 12.05C."  (R. 24)(emphasis added).  In similar fashion, the Commissioner argues that plaintiff "does not have <u>the deficits in adaptive functioning contemplated</u> by 12.05."  (Comm'r Br. 9)(emphasis added).  These statements imply there is a particular standard regarding the deficits in adaptive functioning necessary to meet Listing 12.05C, and leave questions "about what the requirement is, . . . and how it should be assessed by the ALJ."  <u>Barnes</u>, 116 Fed. Appx. at 940.  However, neither the ALJ in the decision at issue, nor the Commissioner in his brief cite to any legal, regulatory, medical, psychological, or psychiatric authority establishing "the deficits in adaptive functioning" which are contemplated or required by Listing 12.05C, and how the ALJ should determine whether the necessary deficits are present in a particular case.

Moreover, the diagnostic description of mental retardation in the Listing requires only "deficits in adaptive functioning initially manifested during the developmental period."  20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.05.  Dr. Ward, a nontreating medical source,[1] found "significant limitations in adaptive functioning."  (R. 310).  Absent a particular contrary standard, or some explanation, Dr. Ward's opinion appears sufficient to meet the criterion stated in the Listing.  However, the state agency psychologists (nonexamining sources) found "higher adaptive functioning" (R. 326), and that plaintiff "seems to have adapted well . . . since he was able to get a driver's license, pay bills, play sports and prepare simple meals; also, care for young children."  (R. 341).  Because the medical opinions are in conflict and the ALJ agreed with the opinion of the state agency psychologists, it is clear the ALJ gave greater weight to the nonexamining source opinion of the state agency psychologists over the nontreating source opinion of Dr. Ward.

While in an appropriate case, the opinion of nonexamining sources might be given greater weight than the opinion of a nontreating source, generally opinions of nontreating sources are

---

[1]Dr. Ward performed a mental status examination of plaintiff, and would in many cases be called an examining source; whereas the state agency psychologists formed their opinions after simply reviewing the record, and would be called reviewing sources.  However, the court prefers to use the terms defined in 20 C.F.R. §§ 404.1502, and 416.902:  treating source, nontreating source, and nonexamining source.

given more weight than opinions of non-examining sources who have merely reviewed the medical record.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984)).

As in this case, where the Commissioner does not give controlling weight to a treating source's opinion on the nature and severity of the claimant's impairment(s), he must weigh all medical opinions in accordance with certain regulatory factors. 20 C.F.R. §§ 404.1527(d)(2)(i, ii) & (d)(3-6), 416.927(d)(2)(i, ii) & (d)(3-6).  Those factors are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  Id. at §§ 404.1527(d)(2-6), 416.927(d)(2-6); see also Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 289-90 (10th Cir. 1995).

-21-

Here, the ALJ stated that he "generally agrees with the opinions of the State agency psychologists," (R. 23), but he did not specifically assign relative weight to the various opinions, and did not explain the basis, evidentiary or otherwise, to prefer the nonexamining source opinions over the nontreating source opinion.  The court finds that substantial evidence in the record as a whole does not support the ALJ's determination that plaintiff does not have the deficits in adaptive functioning required to satisfy the requirements of Listing 12.05C.

Although the court has concluded that the ALJ erred in evaluating whether plaintiff's condition meets Listing 12.05C, it is unable to provide the missing evaluation of the evidence, and cannot conclude that plaintiff, in fact, <u>meets</u> Listing 12.05C. Therefore, remand for further proceedings rather than for immediate award of benefits is the appropriate remedy in this case.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision be REVERSED and that judgment be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

Copies of this recommendation and report shall be delivered to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this

recommendation within ten days after being served with a copy.
Failure to timely file objections with the court will be deemed a
waiver of appellate review.  <u>Morales-Fernandez v. INS</u>, 418 F.3d
1116, 1119 (10th Cir. 2005).

Dated this <u>8th</u> day of June 2009, at Wichita, Kansas.


<u>s/ Donald W. Bostwick</u>
**DONALD W. BOSTWICK**
**United States Magistrate Judge**